## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| RAYMOND SCHMIDLIN and JULIET SCHMIDLIN, Individually and on behalf of all others similarly situated,<br><br>                Plaintiffs,<br><br>   v.<br><br>RAYMOND JAMES FINANCIAL, INC., RAYMOND JAMES & ASSOCIATES, INC., RAYMOND JAMES FINANCIAL SERVICES, INC. and RAYMOND JAMES FINANCIAL SERVICES ADVISORS, INC.,<br><br>                Defendants | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>Demand for a Jury Trial |

Plaintiffs Raymond Schmidlin and Juliet Schmidlin ("Plaintiffs"), on behalf of themselves and all others similarly situated, brings this action as a class action against defendants Raymond James Financial, Inc. ("RJF") and its subsidiaries Raymond James & Associates, Inc. ("RJA"), Raymond James Financial Services, Inc. ("RJFS"), and Raymond James Financial Services Advisors, Inc. ("RJFSA") (collectively "Defendants"). Plaintiffs and the members of the proposed Class were at all relevant times customers of Defendants, a diversified financial services firm, whose cash held in its customers' brokerage accounts was subject to Defendants' cash sweep program, as described below. Plaintiffs allege as follows against Defendants, based on personal knowledge as to Plaintiffs and their own acts, and otherwise on information and belief, based on the investigations of their counsel, which included a review of documents created and distributed by Defendants, filings with the U.S. Securities and Exchange Commission ("SEC"), filings with the Federal Deposit Insurance Corporation ("FDIC"), and other publicly available commentary, analysis, and information. Upon information and belief, Plaintiffs believes that discovery will further support the allegations in this class action complaint.

## I.  INTRODUCTION

1.    This case arises out of cash sweep programs implemented by Defendants whereby, acting as its customers' agent and fiduciary, defendant RJA

automatically "sweeps" uninvested cash balances in its customers' accounts and deposits that cash into a deposit account at one of its affiliated banks, Raymond James Bank, N.A. ("RJ Bank") and TriState Capital Bank ("TriState Bank"), or non-affiliate banks. This cash deposit sweep program is called the Raymond James Bank Deposit Program (the "RJBDP" or "Program").

2.     Defendants implemented the Program ostensibly to offer RJA's customers an interest-paying vehicle to hold cash that offers FDIC insurance on those cash deposits, but in fact, Defendants designed and operated the Program to obtain outsized benefits for themselves from their customers' cash.

3.     In its agreement with its customers, RJA specifically acknowledges that it acts as its customers' "***agent***" – and thus its customers' fiduciary – "in establishing the deposit accounts at each bank, depositing funds into the deposit accounts, withdrawing funds from the deposit accounts, and transferring cash among the deposit accounts." Under this broad scope of the agency, RJA exercises its discretion in selecting: (i) the banks to participate in the Program; (ii) the type of accounts to which the Program applies, and (iii) the type of bank accounts in which the RJA customers' funds are swept. RJA also determines the interest rates to be paid to RJA customers under the Program and further decides the amount of compensation to be paid to RJA and the amount of returns on its customers' funds that are shifted to RJA affiliates. Defendants' actions in designing, implementing, and operating the

Program to benefit itself at the expense of its customers constitutes a breach of the fiduciary duties that RJA owes to its customers.

4.      While acting as its customers' agent, Defendant RJA used the Program to confer significant benefits upon itself and its affiliates by: (1) taking for itself and its affiliates the vast majority of the compensation earned from its customers' cash at the expense of its customers and principals, who received only a minimal return on their cash deposits; and (2) concealing the benefits Defendants and its affiliates received from RJA's principals' cash by making inaccurate, misleading, or oblique disclosures.

5.      RJA also failed to adequately, if at all, disclose to its customers that it was an agent serving two masters – those being its customers on one hand, and its affiliated companies, including RJF, RJFS and RJ Bank, on the other hand. Suffering from this conflict, Defendants shortchanged their customers for the benefit of themselves and their affiliates by negotiating with affiliate and non-affiliate banks one-sided transactions related to the Program. The Program terms shifted compensation and returns on its customers' cash in the Program from those customers to Defendants. Indeed, while acting as its customers' fiduciary agent, RJA negotiated transactions whereby it shifted the compensation that broker-dealers like RJA customarily receive from banks in connection with cash sweep programs to its affiliate banks, RJ Bank and TriState Bank, instead of to its customers, to whom it

owed fiduciary duties. Moreover, RJA failed to disclose these manifestly conflicted transactions, much less obtain informed consent from its customers and principals.

6.      Lastly, Defendants violated their duties to charge reasonable fees on the Program, as required under their contractual agreement with their customers, as well as applicable industry standards.

7.      Plaintiffs bring this action individually and on behalf of a Class of similarly situated individuals for breach of fiduciary duty, gross negligence, breach of contract, violation of Florida Deceptive and Unfair Trade Practices Act, and unjust enrichment to recover damages arising out of Defendants' violations of the law, and for such other relief as the Court may deem just and proper.

## II.      JURISDICTION AND VENUE

8.      This Court has original jurisdiction over the subject matter of this action under 28 U.S.C. §1332(d)(2), as this action is brought as a class action on behalf of class members, one or more members of the class are citizens of a state different than the Defendants, and the amount in controversy exceeds five million dollars ($5,000,000), exclusive of interest and costs.

9.      The Court has personal jurisdiction over Defendants because RJF maintains its principal place of business and headquarters in this District at 888 Carillon Parkway, St. Petersburg, Florida, regularly transacts business in Florida

through its wholly-owned subsidiaries, including defendants RJA and RJFS, and thus has minimum contacts in Florida and in this District.

10.     Venue is proper under 28 U.S.C. § 1391 because, among other things, Defendants maintain their headquarters in this District, have offices in this District, and a substantial part of the events, omissions, and/or relevant conduct by Defendants giving rise to Plaintiffs' claims occurred in this District.

## III.    PARTIES

### A. Plaintiffs

11.     Plaintiff Raymond Schmidlin was at all relevant times a customer of Defendants and is a resident and citizen of Ohio. He maintained an account with RJA in which cash was held over the course of the life of the account. While he was Defendants' customer, the cash held in his account was automatically "swept" into a low interest-bearing bank account at RJ Bank and/or other affiliate or non-affiliate banks pursuant to the Program.

12.     Plaintiff Juliet Schmidlin was at all relevant times a customer of Defendants and is a resident and citizen of Ohio. She maintained an account with RJA in which cash was held over the course of the life of the account. While she was Defendants' customer, the cash held in her account was automatically "swept" into a low interest-bearing bank account at RJ Bank and/or other affiliate or non-affiliate banks pursuant to the Program.

5

**B. Defendants**

13.     Defendant Raymond James Financial, Inc. ("RJF") is a financial services firm based in the U.S. with operations worldwide. RJF is a holding company that conducts business through its subsidiaries, including Defendants RJA, RJFS, and RJFSA, and non-party RJ Bank. RJF is a Florida corporation with its headquarters in this District at 888 Carillon Parkway, St. Petersburg, Florida.

14.     Defendant Raymond James & Associates, Inc. ("RJA") is a Florida corporation headquartered in this District. RJA is a full-service broker-dealer and investment advisor registered with the SEC. It is the wholly-owned subsidiary of RJF.

15.     Defendant Raymond James Financial Services, Inc. ("RJFS") is a registered broker-dealer. RJFS is the registered broker-dealer for client accounts, but it does not hold client assets or settle trades with counterparties. RJA executes and clears all transactions for RJFS, and RJA has custody of all RJFS accounts.

16.     Defendant Raymond James Financial Services Advisors, Inc. ("RJFSA") is a registered investment advisor with the SEC and provided advisory services to Plaintiff. RJFSA is a Florida corporation with its principal place of business within this District.

### C. Relevant Non-Parties

17.     Non-party Raymond James Bank, N.A. ("RJ Bank") is a Florida-chartered bank and is RJF's principal bank subsidiary.

18.     Non-party TriState Capital Bank ("TriState Bank") is a Pennsylvania-chartered bank and a wholly owned subsidiary of RJF.

## IV.    FACTUAL ALLEGATIONS

### A. Defendants' Customer Relationship

19.     The relationship between Defendants and its customers, including Plaintiffs, is set forth in the Master Client Agreement ("RJ Master Client Agreement"). The RJ Master Client Agreement provides a website link to important disclosures about the Program, including those contained in documents titled "Important Client Information" and "Important Information And Disclosures About Your Raymond James Account" (together, "Program Agreement").

20.     The Program Agreement establishes a fiduciary relationship between Defendants and the proposed Class, stating that "RJA will act as your ***agent*** and custodian in establishing and maintaining the deposit accounts at each participating bank." (Emphasis added). The Program Agreement further acknowledges that, "RJA is acting as your agent in establishing the deposit accounts at each bank, depositing funds into the deposit accounts, withdrawing funds from the deposit accounts, and transferring cash among the deposit accounts."

21.    In addition, the RJ Master Agreement and Program Agreement incorporates the rules of applicable federal, state, and self-regulatory organizations, including the SEC and the Financial Industry Regulatory Authority ("FINRA"), and is therefore bound by them.

22.    The RJ Master Client Agreement contains a choice of law provision that provides, in relevant part, that these agreements shall be governed and enforced by the laws of the State of Florida.

**B. The Program**

23.    The predominant cash sweep program that Defendants offer their customers, including Plaintiffs and the proposed Class, and the only one at issue in this case, is the Raymond James Bank Deposit Program (the "RJBDP" or "Program"). The RJBDP has two versions, one that has RJ Bank as the only bank option (referred to as "RJBDP-RJ Bank Only") and another option that allows the customer to choose from a list of other participating banks. The customers' returns from the Program are the same across all participating banks, whether affiliated or not.

24.    The Program Agreement sets forth how customers' uninvested cash is automatically "swept" from the customers' account into deposit accounts with banks that are affiliated with Defendants – *i.e.*, RJ Bank, TriState Bank – and/or banks that are not affiliated with Defendants (collectively, "Participating Banks").

25.     The non-RJA-affiliated Participating Banks pay RJA an amount equal to a percentage of the swept cash not to exceed the Federal Funds Target Rate, plus a 75-basis points kicker. The RJA-affiliated Participating Banks, in addition to a percentage of the swept cash, pay RJA an administrative fee of up to $100 per account. In return, RJA pays its customers a nominal amount in the form of interest and keeps the rest.

### C. RJA Acted as a "Double Agent" Regarding the Program

26.     Pursuant to the Program Agreement, RJA acted as its customers' agent and exercised discretion in the operation of the Program.

27.     The Program Agreement specifically provides that:

- "***RJA will act as your agent*** and custodian in establishing and maintaining the deposit accounts at each participating bank…you will not have a direct relationship with the banks—all deposits and withdrawals will be made by RJA on your behalf". (Emphasis added).

- "***RJA is acting as your agent*** in establishing the deposit accounts at each bank, depositing funds into the deposit accounts, withdrawing funds from the deposit accounts, and transferring cash among the deposit accounts." (Emphasis added).

28.     Thus, in light of the express terms of the Program Agreement, RJA was duty-bound to establish, maintain, and operate the Program in the best interests of its principals, *i.e.*, its customers such as Plaintiffs and the members of the proposed Class. Notwithstanding these obligations, RJA established, maintained, and operated the Program for its own interests, contrary to the interests of its customers.

29.      Given the discretion that Defendants exercise over the Program in light of, among other things, Program Agreement, RJA should have exercised its discretion to benefit its customers, whose agent it was as to the Program, but instead did so to benefit itself and its affiliates. At the same time RJA was acting as its customers' agent in connection with the Program, it was also beholden to its affiliated banks, RJ Bank and TriState Bank. While Defendants acknowledge that they have conflicts of interest, they fail to either fully disclose the conflict or explain the impact of these conflicts, as required to obtain informed consent from their customers.

### D. The Program Benefits Defendants and Their Affiliates, Not Their Customers

30.      In contravention of the applicable agreements and fiduciary obligations, the Program primarily benefited Defendants and their affiliates, at the expense of their customers.

31.      The Program Agreement explains:

Fees paid to RJA by the banks in RJBDP provide RJA a material source of revenue. This revenue is important to the ability of RJA to finance its business activities, and ultimately to the potential profitability of RJA. In addition to the fees received by RJA from the banks, cash balances provide a relatively low-cost source of funds…and help contribute to our profitability.

32.      The majority of cash in the RJBDP is with affiliated banks. According to RJF's Form 10-Q for the period ended June 30, 2024, $23,371,000,000 of

customers' domestic cash sweep balances in the RJBDP is with affiliated banks, and $17,325,000,000 is with non-affiliated banks. According to the Program Agreement, "RJ Bank and TriState Capital Bank benefit by receiving deposits through RJBDP on which each of those banks pays an interest rate that may be less than the cost of other alternative funding sources available to it."

33. In addition, financial advisors affiliated with Defendants likewise profit from the RJBDP. As the Program Agreement states, customers "should expect that Raymond James will share a portion of the revenues it receives from one or more of the sweep options with your financial advisor."

34. As its customers' agent, RJA was bound to act in the best interest of those customers, but failed to do so. Instead, RJA's customers received unreasonably low interest rates under the Program.

35. As its customers' agent, RJA exercises discretion as to the Program's key features, including the transactions by which it negotiates and establishes the rates of returns for its customers. RJA exercised this discretion in a manner that pays unreasonably low interest rates to its customers in the Program. RJA also shifts to its affiliated banks, RJ Bank and TriState Bank, a substantial portion of the beneficial returns on its customers' cash, which would otherwise constitute compensation to the customer in connection with the Program.

36.     RJA is a fiduciary of its customers in the Program, and in that capacity was required to put their customers' interests first – not the interest of RJ Bank or other participating banks – while negotiating and entering into transactions with Participating Banks regarding the Program.

### E. Defendants' Disclosures to Their Customers Regarding the Program Contained Material Misrepresentations and Omissions

37.     RJA's disclosures contained a multitude of material misrepresentations and omissions that inaccurately presented the terms and operation of the Program to Plaintiffs and members of the proposed Class, and thus prevented them from giving informed consent as to the Program and Defendants' conflicts of interests.

38.     For example, pursuant to the Program Agreement, "[i]interest rates paid on your cash balances *may* equal, exceed, or be lower than the prevailing market rates." (Emphasis added). This statement is false and misleading because, as Defendants knew at the time, the interest rate received by customers in the Program would not exceed, or even equal, the prevailing market rates.

39.     Similarly, according to the Program Agreement, "[t]he interest rates paid *may* be higher or lower than the interest rates available to depositors making deposits directly with a bank or other depository institution in a comparable account." (Emphasis added). This statement is false and misleading because direct depositors in RJ Bank *will* receive higher interest rates than they would through the Program.

40.     RJA misleadingly claims in the Program Agreement that it offers the Program "at no additional charge or cost to clients." There is, in fact, a substantial cost to RJA's clients, as they are being deprived of the majority of the returns on their investments, and instead those returns are kept by Defendants and their affiliate banks.

41.     Additionally, according to the Program Agreement, "[t]he interest rate that you receive on your cash in the Cash Sweep Program is not impacted by any revenue shared with, or credit received by, your financial advisor." This is misleading because it implies that the interest rate is set based on factors outside the discretion of Defendants. In fact, any revenue shared with financial advisors will be factored into the interest rate to some extent because the interest rate received by customers is not pegged to anything other than Defendants' discretion.

42.     Notably, Defendants fail to disclose the interest rates that the Program offers, and instead include a link to their website in the Program Agreement.

43.     The Program Agreement is also completely silent regarding interest rates for comparable accounts if used outside of the Program, thereby failing to disclose information that is plainly important to Defendants' customers.

44.     The Program Agreement states that for the "[r]ate determination process for client cash swept through RJBDP to banks other than RJ Bank and TriState Capital Bank", "[t]he interest rates on the deposit account will be

determined by the amount the banks are willing to pay on balances in the deposit accounts." This is misleading and inaccurate because the interest rate is determined by what Defendants decide to pay their customers from the pool of money that the banks pay to Defendants, instead the disclosure implies that the banks are deciding what to pay the customers and omitting Defendants' role in the process.

45.     The Program Agreement states that for the "[r]ate determination process for client cash swept through RJBDP to RJ Bank", "RJ Bank sets the rates that it will pay for each Interest Rate Tier, and any client whose cash sweeps to RJ Bank under RJBDP will receive that interest rate." This disclosure misleadingly implies that the Defendants have no role in setting the interest rates and the rates are set at the discretion of RJ Bank.

46.     The Program Agreement states that for the "[r]ate determination process for client cash swept through RJBDP to TriState Capital Bank," "TriState Capital Bank sets the rates that it will pay for each Interest Rate Tier, and any client whose cash sweeps to TriState Capital Bank under RJBDP will receive that interest rate." Similar to the above, this disclosure misleadingly implies that the Defendants have no role in setting the rates and instead that the interest rates are set at the discretion of TriState Capital Bank.

47.     Additionally, Defendants fail to disclose to customers that RJA agreed to artificially low fees from RJ Bank and TriState Bank for its customers' cash in

the Program. Specifically, according to the Program Agreement, RJ Bank and TriState Bank pay an administrative fee of up to $100 per account. Defendants fail to disclose that these terms amongst related party-entities were well below market rates and were negotiated for Defendants' benefit.

48.     Unbeknownst to Defendants' customers in the Program, their agent, RJA, enabled RJ Bank and TriState Bank to function as a highly profitable arbitrage operation as to the RJA customers' cash in the Program, taking advantage of the nearly free cash funneled to it by RJA as agent of its customers pursuant to the Program, and retaining for itself the vast majority of the profits it generates with that cash, including the customary compensation that RJA shifted to RJ Bank and TriState Bank.

49.     Defendants' disclosures omit the fact that that RJA negotiated and entered into transactions regarding the Program that directly impacted Plaintiff and the proposed Class, and did so while conflicted, putting the interests of its affiliate banks before the interests of its customers. Defendants' disclosures further omit that RJA foregoes substantial compensation in connection with the Program so as to benefit RJ Bank and TriState Bank, instead of its customers to whom Defendants owed a fiduciary duty in connection with the Program.

## V.    CLASS ACTION ALLEGATIONS

50.    Plaintiffs reallege and incorporate by reference the allegations set forth above.

51.    Plaintiffs bring this action individually and as a class action pursuant to Rules 23(a), 23(b)(2), and 23(b)(3) of the Federal Rules of Civil Procedure on behalf of the Class consisting of: All persons who held cash positions in accounts custodied by Defendants, and whose cash was subject to Defendants' Program.

52.    Excluded from the Class are governmental entities, institutional and other non-retail investors; Defendants and any of its affiliates, legal representatives, employs, or officers; the judicial officer(s) and any judicial staff overseeing this litigation; and counsel for Plaintiffs and the proposed Class, including other attorneys and staff at each respective firm.

53.    Plaintiffs reserve the right to amend the Class definitions if further investigation and discovery indicates that the Class definition should be narrowed, expanded, or otherwise modified.

54.    This action has been brought and may be maintained as a class action under Federal Rule of Civil Procedure 23.

### A. Numerosity - Rule 23(a)(1)

55.    Class members are so numerous that their individual joinder is impracticable. The precise number of Class members and their identities are

unknown to Plaintiffs at this time. However, Defendants oversee approximately $1.48 trillion in client assets through the work of more than 8,800 financial advisors, and Plaintiffs believes that the members of the proposed Class number in the thousands. Accordingly, Plaintiffs and the Class satisfy the numerosity requirement of Rule 23. Class members may be notified of the pendency of this action by mail, published notice, or other appropriate methods.

## B. Existence and Predominance of Common Questions of Law and Fact - Rule 23(a)(2), 23(b)(3)

56.     Common questions of law and fact exist as to all members of the Class and predominate over questions affecting only individual Class members. These common legal and factual questions, each of which may also be certified under Rule 23(c)(4), include the following, whether:

   a.     Defendants owed fiduciary duties to Plaintiffs and the putative Class members in connection with the Program;

   b.     Defendants breached their duties to Plaintiffs and the putative Class members in establishing, maintaining, and/or operating the Program;

   c.     Defendants' disclosures about the Program contained material misrepresentations or omissions;

   d.     Defendants breached their contract with Plaintiffs and the putative Class members regarding the Program;

   e.     Defendants were unjustly enriched by their wrongful conduct;

f.      this case may be maintained as a class action under Fed. R. Civ. P. 23;

g.      to what extent Class members are entitled to damages and other monetary relief; and

h.      to what extent Class members are entitled to attorneys' fees and costs.

## C. Typicality - Rule 23(a)(3)

57.    Plaintiffs' claims are typical of the claims of the Class because they were customers of Defendants who had their cash balances improperly managed by RJA through its administration of the Program. Thus, Plaintiffs' claims are typical of the claims of the members of the Class as the claims arise from the same course of conduct by Defendants, and the relief sought within the Class is common to the members of each.

## D. Adequacy of Representation - Rule 23(a)(4)

58.    Plaintiffs will fairly and adequately protect the interests of Class members. Plaintiffs have retained counsel competent and experienced in complex class action litigation, and Plaintiffs will prosecute this action vigorously. Plaintiffs have no interests adverse or antagonistic to those of the Class.

## E. Superiority - Rule 23(b)(3)

59.    A class action is superior to all other available means for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by individual Class members are small compared with the burden and

expense that would be entailed by individual litigation of their claims against Defendants. It would thus be virtually impossible for the Class members, on an individual basis, to obtain effective redress for the wrongs done them.

60.    Even if Class members could afford individualized litigation, the court system could not. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances here.

61.    Additionally, the Class may be certified under Rule 23(b)(1) and/or (b)(2) because:

a.    the prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications with respect to individual Class members that would establish incompatible standards of conduct for Defendants;

b.    the prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them which would, as a practical matter, be dispositive of the interests of other Class members

not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and/or

c.     Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final and injunctive relief with respect to the Class members as a whole.

## VI.    CAUSES OF ACTION

### FIRST CAUSE OF ACTION
**BREACH OF FIDUCIARY DUTY**
**(Asserted on behalf of the Plaintiffs and the Class against Defendants)**

62.    Plaintiffs reallege and incorporate by reference the preceding factual allegations as if fully set forth herein.

63.    At all relevant times, Defendants owed fiduciary duties to Plaintiffs and the members of the Class in connection with the Program. Such duties independently arose out of (1) the agency relationship between defendant RJA, on one hand, and Plaintiffs and the members of the Class on the other hand, as to the Program; (2) Defendants holding and control over beneficial funds that belonged to its customers, related to their cash sweep balances; (3) Defendants' discretion as to the Program and their customers' cash, while acting as their agent; and/or (4) the applicable industry standards. As a fiduciary to Plaintiffs and the Class, Defendants owed them the highest duties of loyalty, candor, due care, and prudence in as to the services they provided to them in connection with establishing, maintaining, and/or operating the

Program. Moreover, as a fiduciary, Defendants had a continuing duty to act exclusively for the benefit of Plaintiffs and the Class in connection with establishing, maintaining, and/or operating the Program. Lastly, as a fiduciary, Defendants had a continuing duty to obtain *informed* consent from Plaintiffs and the Class regarding the Program, and specifically make sufficiently detailed disclosures regarding the Program, their role, the role of various related parties, and any conflicts of interest to obtain such informed consent.

64.    Defendants further owed Plaintiffs and the Class the fiduciary duty to act in good faith in connection with establishing, maintaining, and/or operating the Program.

65.    Defendants further owed Plaintiffs and the Class the duty to charge reasonable fees for their services related to the Program.

66.    Plaintiffs and the Class were fully dependent upon Defendants' ability, skill, knowledge, and goodwill with respect to Defendants' Program.

67.    Defendants owed Plaintiffs and the Class similar duties by virtue of their control over Defendants' policies or management regarding the Program.

68.    Defendants breached their fiduciary duties by the conduct alleged herein, including by designing, structuring, and/or operating the Program to benefit themselves at the expense of their fiduciary customers, making material

misrepresentations and omissions regarding the Program, violating its duty of care, and acting in their own – not their customers' – best interest vis-à-vis the Program.

69.     Defendants violated their duty of loyalty by, among other things, putting their interest above that of their fiduciary customers, failing to provide sufficient information to their fiduciary customers regarding material features of the Program to obtain ***informed*** consent from them, and not properly disclosing their own and their affiliates' role in, and conflicts of interest arising out of the Program, as more fully shown above.

70.     As a direct and proximate consequence of Defendants' conduct as alleged herein, Plaintiffs and the Class suffered damages in an amount to be determined at trial and seek disgorgement of any undue and unjust gains of Defendants, as well as all other equitable relief deemed just and proper.

## SECOND CAUSE OF ACTION
### GROSS NEGLIGENCE
**(Asserted on behalf of the Plaintiffs and the Class against Defendants)**

71.     Plaintiffs reallege and incorporate by reference the preceding factual allegations as if fully set forth herein.

72.     Defendants owed Plaintiffs and the putative Class, all of whom were their fiduciary customers vis-à-vis the Program, certain duties related to its establishment, maintenance, and operation of the Program.

73.    Those duties arose out of: (1) the agency relationship between Defendant RJA, on one hand, and Plaintiffs and the members of the Class on the other hand, as to the Program; (2) Defendants' holding and control over beneficial funds that belonged to their customers, related to their cash sweep balances; and (3) the applicable industry standards.

74.    Defendants' duties to their customers included establishing, maintaining, and/or operating the Program for the benefit of their customers, not for Defendants' own benefit. Moreover, Defendants had a duty to make sufficient disclosures to their customers regarding the Program as needed for those customers to give ***informed*** consent regarding the Program.

75.    Defendants owed Plaintiffs and the Class similar duties by virtue of their control over Defendants' policies or management with regard to the Program.

76.    Defendants breached their duties by the conduct alleged herein, including by designing, structuring, and/or conducting transactions related to the Program to benefit themselves at the expense of their customers, making material misrepresentations and omissions regarding the Program, violating their duty of care, acting in their own – not their customers' – best interest vis-à-vis the Program.

77.    Defendants were not merely negligent; as more fully shown above, they were grossly negligent because their self-serving conduct showed the want of even scant care and/or was an extreme departure from the ordinary standard of conduct.

78.     Defendants' gross negligence directly and proximately caused harm to Plaintiffs and the members of the proposed Class.

## THIRD CAUSE OF ACTION
### UNJUST ENRICHMENT (IN THE ALTERNATIVE)
**(Asserted on behalf of the Plaintiffs and the Class against Defendants)**

79.     Plaintiffs reallege and incorporate by reference the preceding factual allegations as if fully set forth herein.

80.     In the alternative, Defendants have received and retained a benefit from Plaintiffs and the members of the proposed Class, and inequity has resulted.

81.     Defendants benefited through their unjust conduct by sweeping available cash balances from their customers' accounts in the Program into bank accounts selected for the benefits they offered to Defendants, not their customers, and retained most of the interest generated by those cash balances.

82.     Plaintiffs allege that it is inequitable for Defendants to retain these benefits.

83.     Plaintiffs allege that because of Defendants' conduct, the amount of their unjust enrichment should be disgorged in an amount to be proven at trial.

## FOURTH CAUSE OF ACTION
### BREACH OF CONTRACT (IN THE ALTERNATIVE)
**(Asserted on behalf of the Plaintiffs and the Class against Defendants)**

84.     Plaintiffs reallege and incorporate by reference the preceding factual allegations as if fully set forth herein.

85.     Plaintiffs assert this cause of action for breach of contract in the alternative.

86.     Defendants' relationship with their customers is governed by a written contract, the terms of which are contained in, and incorporated into various standardized documents drafted by Defendants, including the RJ Master Client Agreement and the Program Agreement.

87.     The RJ Master Client Agreement and Program Agreement incorporate the rules of applicable federal, state, and self-regulatory organizations including the SEC and FINRA.

88.     FINRA Rule 2122 expressly provides that "[c]harges, if any, for services performed . . . shall be reasonable and not unfairly discriminatory among customers."

89.     Pursuant to the Program Agreement, Defendants undertook to act as an agent of the customers with regard to all transactions relating to the Program and were thus contractually obligated to obtain for Plaintiffs and members of the proposed Class, through such transactions, rates of return on their cash balances that are reasonable.

90.     As set forth herein, the rates of return paid to customers on their cash balances were not reasonable. Accordingly, Defendants breached their contracts with Plaintiffs and the members of the proposed Class.

91.     Plaintiffs and the members of the proposed Class were harmed by Defendants' breach.

### FIFTH CAUSE OF ACTION
### VIOLATION OF FLORIDA'S DECEPTIVE AND UNFAIR TRADE PRACTICES ACT
### (Fla. Stat. §§ 501.201-.213)
### (Asserted on behalf of the Plaintiffs and the Class against Defendants)

92.     Plaintiffs reallege and incorporate by reference the preceding factual allegations as if fully set forth herein.

93.     Defendants' acts and practices alleged herein constitute unfair, unconscionable and/or deceptive methods, acts or practices under the Florida Deceptive and Unfair Trade Practices Act, § 501.201, et seq. ("FDUTPA").

94.     At all relevant times, Plaintiffs and members of the proposed class were "consumers" within the meaning of the FDUTPA. Fla. Stat. § 501.203(7).

95.     Defendants' conduct, as set forth herein, occurred in the conduct of "trade or commerce" within the meaning of the FDUTPA. Fla. Stat. § 501.203(8).

96.     FDUTPA prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce" at set forth in the statute. Fla. Stat. § 501.204(1).

97.     Plaintiffs allege that Defendants have, in the course of their business and the course of trade or commerce, undertaken and engaged in unfair business acts and practices by, among other things, engaging in transactions relating to the

Program to generate substantial revenue for themselves with their customers' cash and beneficial returns on such cash, while paying their customers only a small fraction of those returns and concealing from such customers the portions of those customers' returns that they directed to and conferred upon their affiliates, and the fact that those portions represented the vast majority of such interest. Defendants have further engaged in material misrepresentations and omissions regarding key features of the Program.

98.     The deceptive business acts or practices described herein presented a threat and likelihood of harm and deception to Plaintiffs and the Class in that Defendants have systematically perpetrated the unfair conduct upon members of the public by engaging in the conduct described herein.

99.     Defendants knew or should have known that their conduct violated FDUTPA.

100.    Defendants were under a duty to Plaintiffs and the proposed Class.

101.    As a result of Defendants' misrepresentations and omissions of material facts concerning the Program, Defendants knowingly and intentionally concealed material facts and breached their duty not to do so.

102.    The facts concealed or not disclosed by Defendants are material because a reasonable person would have considered them to be important in deciding whether or not to be involved in the Program. Had Plaintiffs and the Class been

aware of the Defendants conduct with respect to the transactions relating to the Program, which greatly favored Defendants and their affiliates at their fiduciary customers' expense, Plaintiffs and the Class would not have participated in those investment products or would have done so on different terms.

103.    As a result of Defendants' misconduct, Plaintiffs and the proposed Class have been harmed and have suffered actual damages including, without limitation, the beneficial returns on cash positions from the Program that Defendants improperly withheld from Plaintiff's money as fees for itself, as set forth above.

104.    As a direct and proximate result of Defendants' unfair or deceptive acts or practices, Plaintiffs and the proposed Class have suffered and will continue to suffer actual damages.

105.    Defendants' violations present a continuing risk to Plaintiffs and the proposed Class as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

106.    Plaintiffs and the proposed Class seek, inter alia, actual damages in an amount to be determined at trial, reasonable attorneys' fees, and any other just and proper relief available under the FDUTPA.

## VII.   PRAYER FOR RELIEF

Plaintiffs request relief as follows:

1.      Actual damages;

2.   Punitive damages;

3.   Injunctive relief prohibiting Defendants from continuing to engage in the conduct alleged herein;

4.   Attorneys' fees and costs of suit;

5.   Prejudgment interest; and

6.   Such other relief as the Court deems just and proper.

## VIII.  DEMAND FOR A JURY TRIAL

Plaintiffs demand a trial by jury on all claims so triable.

DATED: August 27, 2024

Respectfully submitted,

**STEINLAW FLORIDA, PLLC**
By: */s/ Jonathan M. Stein*
Jonathan M. Stein (Fla. Bar No. 9784)
1825 NW Corporate Blvd., Suite 110
Boca Raton, FL 33431
(561) 834-2699
jon@SteinLawFlorida.com

**ROSCA SCARLATO LLC**
Jonathan A. Korte, Esq. (FL 126450)
(pro hac vice forthcoming)
2000 Auburn Dr. Suite 200
Beachwood, OH 44122
Telephone: (216) 946-7070
E-mail: arosca@rscounsel.law
jkorte@rscounsel.law

Paul J. Scarlato, Esq. (PA 47155)
(pro hac vice forthcoming)
161 Washington Street, Suite 1025

Conshohocken, PA 19428
Telephone: (216) 946-7070
E-mail: pscarlato@rscounsel.law

**BERGER MONTAGUE PC**
Michael Dell'Angelo
(pro hac vice forthcoming)
Andrew D. Abramowitz
(pro hac vice forthcoming)
Alex B. Heller
(pro hac vice forthcoming)
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Telephone: (215) 875-3000
rraghavan@bm.net
mdellangelo@bm.net
aabramowitz@bm.net
aheller@bm.net

*Counsel for Plaintiffs and the
Proposed Class*