UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

RAYMOND SCHMIDLIN and
JULIET SCHMIDLIN, individually
and on behalf of all others similarly
situated,

      Plaintiffs,

v.

RAYMOND JAMES FINANCIAL,
INC. et al.,

      Defendants.

_____

Case No. 8:24-cv-2041-KKM-CPT

## <u>ORDER</u>

The plaintiffs bring this putative class action against Raymond James Financial, Inc., Raymond James & Associates, Inc., Raymond James Financial Services, Inc., Raymond James Trust Company of New Hampshire (RJ Trust), Raymond James Financial Services Advisors, Inc., (collectively, Raymond James), alleging that the defendants underpaid interest rates owed on clients' uninvested cash enrolled in the below-described cash sweep program in violation of contractual and fiduciary duties. Consolidated Class Action Compl. (CCAC) (Doc. 58). The complaint asserts claims for breach of contract, breach of the implied warranty of good faith and fair dealing, and breach of fiduciary duties, as well as unjust enrichment. *Id.* ¶¶ 180–202. Raymond James moves

to dismiss on statute of limitations grounds and for failure to state a claim. MTD (Doc. 100). The plaintiffs oppose. Resp. (Doc. 113). Raymond James replies in support of its motion. Reply. (Doc. 122). For the reasons explained below, I grant in part and deny in part the motion to dismiss.

## I.    BACKGROUND

Raymond James Financial, Inc., is a Florida corporation that provides financial services through its subsidiaries, several of which are also defendants in this action. *See* CCAC ¶ 11. Raymond James provides investment management services, financial consulting, wealth management, and other advisory services to the plaintiffs here. *See id.*

This action concerns the cash sweep program offered by Raymond James. A cash sweep program permits a brokerage firm to transfer or "sweep" uninvested cash from a client's brokerage account into an interest-bearing bank deposit account that generates returns for the client and the brokerage firm. *See* CCAC ¶ 2. Raymond James offers three cash-sweep options, two of which are relevant to this action. *See id.* ¶¶ 26–27. The first is the Raymond James Bank Deposit Program (RJBDP), which allows customers to choose from a list of banks that will receive the customers' swept cash. *Id.* ¶ 26. The second is the RJBDP-RJ Bank Only program, which sweeps customers' cash only to the affiliated Raymond James Bank, N.A. *See id.* ¶¶ 5, 26.

The Master Client Agreement (MCA) governs the relationship between Raymond James and its clients, including the plaintiffs, and the MCA incorporates a separate Important Client Information (ICI) document that contains most of the terms and conditions for the two cash sweep programs. *See id.* ¶¶ 29–37; MCA (Doc. 101-2) at 10–11; ICI (Doc. 101-1) at 40–52. Florida law governs the agreements. CCAC ¶ 31. Although not attached to the complaint, the MCA and ICI are central to the plaintiffs' claims, repeatedly referenced in the Consolidated Class Action Complaint, and the plaintiffs do not dispute their authenticity. *See Johnson v. City of Atlanta*, 107 F.4th 1292, 1300 (11th Cir. 2024); *see generally* Resp. (failing to contest the use of the MCA and ICI).

Plaintiff Raymond Schmidlin is a citizen of Ohio and "maintained a SEP IRA account with Raymond James in which cash was held over the course of the life of the account." *Id.* ¶ 17. Plaintiff Juliet Schmidlin is a citizen of Ohio and "maintained both an individual Raymond James brokerage account in which cash was held over the course of the life of the account, and a Raymond James traditional IRA account in which cash was held over the course of the life of the account." *Id.* ¶ 18. Plaintiff Toni Conran is a resident of Florida and "maintained a traditional IRA account" and "a retail brokerage account" on behalf of the Conran Family Trust with Raymond James from 2016 to 2024.

*Id.* ¶ 19. Plaintiff Cynthia Laube is a resident of Minnesota and "maintained a traditional IRA account with" Raymond James. *Id.* ¶ 20.

During the relevant time, the plaintiffs participated in the cash sweep program. *See id.* ¶¶ 17–20. In return, the plaintiffs "received unreasonably low interest." *See id.* This is the gravamen of the complaint—that "Raymond James underpaid its clients in violation of its fiduciary and contractual duties in order to enrich itself at its clients' expense." *Id.* ¶ 1. The plaintiffs plan to seek certification of a class of "[c]lients of Raymond James who had cash deposits or balances in Raymond James's Cash Sweep Program from September 1, 2019 until the unlawful conduct alleged [in the complaint] ceases." *Id.* ¶ 165.

## II.    LEGAL STANDARDS

Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." This pleading standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice

if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.' " *Id.* (quoting *Twombly*, 550 U.S. at 557).

To survive a motion to dismiss for failure to state a claim, a plaintiff must plead sufficient facts to state a claim that is "plausible on its face." *Id.* (quoting *Twombly*, 550 U.S. at 570). A claim is plausible on its face when a "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* When considering the motion, the complaint's factual allegations are accepted "as true" and construed "in the light most favorable to the plaintiff." *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). Consideration is limited "to the well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed." *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004), *abrogated on other grounds by Twombly*, 550 U.S. at 544.

## III.   ANALYSIS

### A. Statute of Limitations

Raymond James avers that the plaintiffs' claims are barred by the Florida statute of limitations because the "claims accrued no later than in 2018, more than five years before Plaintiffs filed suit, when interest rates paid on cash in the Sweep Program were 'drastically lower' than the other alleged

rates relied on in Plaintiffs' Complaint." MTD at 12–13. In Florida, the statute of limitations for breach of a written contract and breach of an implied covenant of good faith and fair dealing is five years from the breach. *See* § 95.11(2)(b), Fla. Stat. For unjust enrichment and breach of fiduciary duty, the statute of limitations is four years in Florida. *See* §§ 95.11(3)(j), (o), Fla. Stat. Thus, if Raymond James is correct, the plaintiffs had to sue no later than 2022 or 2023, depending on the cause of action.

The plaintiffs argue that their breach of contract and implied covenant causes of action accrued at the time of each breach and that Raymond James breached each time it "paid its clients an unreasonably low interest rate." Resp. at 8. They also argue that the obligations that Raymond James breached were continuing obligations, providing separate grounds for the claims to survive. Resp. at 8–10. As I have explained elsewhere, *see 600 Cleveland, LLC v. Bank of Am., N.A.*, No. 8:24-cv-1652-KKM-AAS, 2026 WL 183553, at *10 (M.D. Fla. Jan. 23, 2026), whether one characterizes contracts that require repeat future payments, like this one, as continuing obligation contracts or as divisible contracts, with each obligation or owed payment forming its own cause of action with a separate limitations period upon each breach, the outcome is the same. Either way, a plaintiff is still limited to recovering damages that fall within the five-year limitations period from the date of filing. *See Grove Isle*

6

*Ass'n, Inc. v. Grove Isle Assocs., LLLP*, 137 So. 3d 1081, 1095 (Fla. 3d DCA 2014) (per curiam); *XP Glob., Inc. v. AVM, L.P.*, No. 16-CV-80905, 2016 WL 4987618, at *3 (S.D. Fla. Sept. 19, 2016).

That five-year recovery window governs here. This action began when the plaintiffs filed the original class action complaint on August 27, 2024. *See* Class Action Compl. (Doc. 1). The plaintiffs seek damages from any breaches occurring on or after September 1, 2019. *See* CCAC ¶ 165; Resp. at 7–8. Because the plaintiffs' contract and implied covenant claims do not seek to recover damages outside that five-year period, the statute of limitations does not bar these claims.

I need not consider whether the unjust enrichment claim is precluded by the statute of limitations because I dismiss it with prejudice on other grounds.

Because I dismiss the fiduciary duty claim without prejudice, I similarly do not resolve the statute of limitations question for that claim. But I note that, assuming the plaintiffs amend their complaint to properly state a breach of fiduciary duty claim, Florida has a continuing tort doctrine that operates similarly to the continuing obligation doctrine, including in limiting recovery to damages within the statute of limitations period, which would be the four years before the action began. *See Seaboard Air Line R. Co. v. Holt*, 92 So. 2d 169, 170 (Fla. 1956) (per curiam) (holding that, when there is a continuing tort,

plaintiffs may recover damages within the statute of limitations period even if the initial tortious conduct falls outside the limitations period).

## B. Failure to State a Claim

Raymond James moves to dismiss each of the plaintiffs' claims for failure to state a claim. RJ Trust also argues that the complaint fails to state a claim against it because it is an "uninvolved corporate affiliate[]" and there are "no allegations that would render [it] liable under any alter ego or agency theory." MTD at 39. I disagree with Raymond James as to the breach of contract and the implied covenant of good faith and fair dealing claims. I agree that the fiduciary duty and unjust enrichment claims must be dismissed. I disagree that RJ Trust should be dismissed.

### 1. Breach of Contract

To state a claim for breach of contract under Florida law, a plaintiff must allege "(1) a valid contract; (2) a material breach; and (3) damages." *Abbott Lab'ys, Inc. v. Gen. Elec. Cap.*, 765 So. 2d 737, 740 (Fla. 5th DCA 2000). There is no dispute that the MCA and ICI form a valid contract between Raymond James and the plaintiffs.

The plaintiffs allege that Raymond James breached the MCA and ICI by failing "to pay to or secure for Plaintiffs and Class members an interest rate on their Cash Sweep Program holdings that accounted for prevailing economic

and business conditions." CCAC ¶ 183. Raymond James argues (1) its performance was consistent with the contract's terms, so there was no breach; (2) the two statements in the contracts that the plaintiffs rely on do not support a claim for breach; and (3) the plaintiffs have not pleaded causation. MTD at 14–25.

Raymond James's first argument is unpersuasive. Because it complied with certain terms regarding the cash sweep program, including some of the terms on fees and interest rates, Raymond James contends that there can be no breach. *Id.* at 14–15. Raymond James does not explain how compliance with some of the terms negates allegations that it breached other terms. *See id.* Nor am I aware of any basis in the MCA and ICI to support that view.

Raymond James's second argument—that the two statements in the ICI that the plaintiffs rely upon to allege a breach of contract do not support such a claim—is more substantial, although ultimately not successful at this stage. The plaintiffs breach of contract count specifically alleges only the ICI's statement that "[i]nterest rates will vary based upon prevailing economic and business conditions," ICI at 44; *see* CCAC ¶¶ 181–184, and that Raymond James failed to pay or secure interest rates that accounted for those conditions, CCAC ¶ 183. The breach of contract claim, nevertheless, incorporates all the preceding paragraphs in the complaint, *id.* ¶ 180, including that Raymond

James agreed to pay a "reasonable rate of interest," *id.* ¶ 55, 56, 93, 94. While sloppy draftsmanship, the parties agree that the plaintiffs assert two bases for breach of contract premised on these two provisions: one concerning that interest rates will vary "based upon prevailing economic and business conditions" and the other that a "reasonable rate of interest" is owed.[1] *See* MTD at 15, 17; Resp. at 10, 16. I address each in turn.

The ICI provides disclosure information for Raymond James's clients on a wide range of topics, from account types and services to compensation and investment products. Within the Investment Products and Services section, a subsection explains the parameters of the Cash Sweep Program. Of importance for purposes of this first theory of breach is the sub-subsection that sets out the "[i]nterest rate to be received by clients." ICI at 44. In broad strokes, this

---

[1] When discussing options for dividends and interest payments, the ICI states that clients "may prefer to have payments automatically swept into an interest-bearing account." ICI at 56. "[B]y sweeping your payments into an interest-bearing account, you will begin earning *competitive rates of interest* on them immediately." *Id.* (emphasis added). Although referenced in a handful of places in the complaint's extensive factual allegations, CCAC ¶¶ 96, 140, 149, the plaintiffs do not respond to Raymond James's argument that this statement cannot be the basis for a breach of contract claim. *See* MTD at 19 n.13; *see generally* Resp. Thus, to the extent that the plaintiffs ever relied on this statement as a third theory of breach, they have now abandoned it. *See Garrett-Alfred v. Facebook*, Inc., 540 F. Supp. 3d 1129, 1137 (M.D. Fla. 2021); *U.S. ex rel. Osheroff v. Tenet Healthcare Corp.*, 09-22253-CIV, 2012 WL 2871264, at *9 (S.D. Fla. July 12, 2012) ("The failure to defend a claim in responding to a motion to dismiss results in the abandonment of that claim." (citing *Edmondson v. Bd. of Trs. of Univ. of Ala.*, 258 F. App'x 250, 253 (11th Cir. 2007) (per curiam)).

section provides for interest rate tiers based on the cash balances held by the client, which Raymond James posts online. *Id.* at 43–44. The program notifies clients that "[i]nterest rates may change at any time without notice," that the interest rates "may equal, exceed, or be lower than the prevailing market rates" and "may be higher or lower than the interest rates available to depositors making deposits directly with a bank or other depository institution in a comparable account." *Id.* at 44. Notably, "[i]nterest rates will vary based upon prevailing economic and business conditions." *Id.* That last statement is followed by the disclosure that, "[i]n periods of low interest rates," clients' interest rates "could be as low as zero." *Id.* The parties have not identified any provision, either in this sub-subsection or elsewhere in the ICI, that elaborates on how Raymond James must set the interest rates or otherwise specifies which market rates or economic and business conditions control or how Raymond James must exercise its discretion in considering those conditions.

To Raymond James, the statement that the rates "will vary based upon prevailing economic and business conditions" "simply identifies that the rate is subject to change." MTD at 16. I agree in part, to the extent that the overall structure of the section on the Cash Sweep Program within the ICI and the above noted language appear to provide Raymond James with discretion to set the interest rate. But like other courts faced with similar contract language at

the motion-to-dismiss stage, I conclude that the complaint sufficiently alleges a reasonable interpretation and breach of this provision: that this is an enforceable promise that Raymond James would change the interest rates based upon "prevailing economic and business conditions." *See Mehlman v. Ameriprise Fin., Inc.*, No. CV 24-3018 (JRT/DLM), 2025 WL 2403252, at *7 (D. Minn. Aug. 19, 2025) (concluding that the plaintiffs properly stated a breach of contract claim regarding a contract provision that stated that "[i]nterest rates on the Deposit Accounts will be tiered and will vary based upon prevailing economic and business conditions."); *Liberty Cap. Grp. v. Oppenheimer Holdings Inc.*, 802 F. Supp. 3d 701, 712–15 (S.D.N.Y. 2025) (same with a contract provision that stated that "interest rates on the Deposit Accounts will . . . vary based upon prevailing economic and business conditions."); *In re JPMorgan Chase Cash Sweep Program*, No. 24 CIV. 6404 (LGS), 2026 WL 396055, at *2, 6–7 (S.D.N.Y. Feb. 12, 2026) (concluding the same with a contract provision stating that "[t]he interest rate paid on Deposit Account balances will vary based on business and economic conditions"); *In re Wells Fargo Cash Sweep Litig.*, No. 24-CV-04616-VC, 2025 WL 1785315, at *2 (N.D. Cal. June 27, 2025) (reaching the same conclusion in part based on a disclosure that stated that "[w]hile we have policies and procedures designed to pay a reasonable rate of interest based on prevailing interest rates at other or similar

12

financial services firms, our rates are not always the highest interest rates available"); *cf. Dey v. Robinhood Markets, Inc.*, 780 F. Supp. 3d 882, 892 (N.D. Cal. 2025) (considering a motion to dismiss a negligent misrepresentation claim and deeming plausible the allegation that "a reasonable customer would understand" a contract provision stating that "interest rates on the Deposit Accounts will vary based upon prevailing economic and business conditions" "to mean that interest rates will correlate to market conditions"); *Gillis v. Respond Power, LLC*, 803 F. App'x 631, 632, 634 (3d Cir. 2020) (holding that a variable rate energy agreement "required that [the energy provider] base its variable rate on certain factors" because the agreement had a provision stating that although the energy provider's " 'goal each and every month is to deliver power at a price that is less than what [the consumer] would have paid' the local utility company, 'due to market fluctuations and conditions, [the provider] cannot always guarantee that every month [the consumer] will see savings' ").

Assuming that the above obligated Raymond James to exercise its discretion in a particular way when setting the interest rates "based upon prevailing economic and business conditions," the complaint sufficiently alleges a breach. *See, e.g.*, CCAC ¶ 105 ("Contrary to the terms of Raymond James's agreements with its clients, . . . Raymond James in fact ignored or failed to properly take into account prevailing economic and business

13

conditions in setting rates."); *id.* ¶¶ 106–110 (comparing the "nearly flat Cash Sweep Program rates" to the Federal Funds Rate (the interest rate at which banks lend to one another), which "increased significantly" in the relevant period); *id.* ¶¶ 141–51, 157–64 (comparing Raymond James's rates to the higher rates of other cash sweep programs, the yield on short-term U.S. Treasury Bills, and interest rates for other "short-term instruments such as repurchase agreements"). Raymond James argues that these are irrelevant comparators. MTD at 21–24. That might prove true, but is best decided at later stages of litigation. Construing the complaint in the light most favorable to the plaintiffs and drawing all inferences in their favor, these alleged comparisons, although they are not each equally compelling, are sufficient to plausibly allege that Raymond James did not vary its rates based on "prevailing economic and business conditions." *See Liberty Cap. Grp.*, 802 F. Supp. 3d at 714 (reaching the same conclusion regarding similar comparators); *Wells Fargo*, 2025 WL 1785315, at *2 (same); *Ameriprise*, 2025 WL 2403252, at *8–9 (same).

The plaintiffs' second theory of breach derives from a statement in a different sub-subsection of the Cash Sweep Program concerning deposits into accounts for clients "eligible solely for the RJBD-RJ Bank Only" sweep. ICI at 47. For those clients, "[they] authorize the deposit or investment of cash balances in [their] account in deposits issued by RJ Bank, which will bear a

14

*reasonable* rate of interest (as required by 29 C.F.R. Section 2550.408b-4(b)(2)).” *Id.* (emphasis added); *see* CCAC ¶¶ 93–94. Raymond James makes much of the fact that this statement is found outside the primary section for the terms of the interest rate. *See* MTD at 17–20 (describing this as a “customer *authorization* provision” that is relevant only for “challenging the excise tax consequences to Raymond James”). Context certainly informs meaning and a contract must be read as a whole. But without more explanation about what this provision accomplishes or its tax-implications to provide the necessary background understanding of “reasonable rate” here, I cannot conclude that it bears no meaning as to the interest rate that Raymond James must provide.

Relatedly, Raymond James avers that, because the ICI’s language references 29 C.F.R. Section 2550.408b-4(b)(2), this theory of breach of contract is an attempt to improperly assert a non-existent private right of action. *See* MTD at 17–19. I do not agree based on the parties’ arguments as presented.

In at least some contexts, Florida law allows “statutory provisions that contain neither express nor implied private rights of action” to “form the basis for a breach of contract action.” *Johnson v. Catamaran Health Sols., LLC*, 687 F. App’x 825, 829 (11th Cir. 2017) (per curiam) (quoting *Lutz v. Protective Life Ins. Co.*, 951 So. 2d 884, 887 (Fla. 4th DCA 2007)) (citation modified); *Hosp.*

*Corp. of Am. v. Fla. Med. Ctr., Inc.*, 710 So. 2d 573, 574–75 (Fla. 4th DCA 1998) (per curiam) ("However, there is no recognized independent cause of action for breach of a duty to obey laws other than as may be included in the terms of contract."); *Wilcox v. Atkins*, 213 So. 2d 879, 882 (Fla. 2d DCA 1968) ("In this regard, the law imported into a contract does not create an independent agreement, but makes the instrument itself express the full agreement of the parties."). Raymond James offers no reason why the same is not true in this context. Thus, I conclude that, at this stage, reference to the regulation was an attempt by the parties to incorporate its substance into the contract. *See Citizens Ins. Co. v. Barnes*, 124 So. 722, 723–24 (Fla. 1929) (holding that insurance regulations could form the basis of a breach of contract action because "[t]his is in line with the general doctrine that, where parties contract upon a subject which is surrounded by statutory limitations and requirements, they are presumed to have entered into their engagements with reference to such statute, and the same enters into and becomes a part of the contract"). Indeed, the Eleventh Circuit holds that, at least in some contract contexts, "parties may incorporate federal statutes without private rights of action." *Perez v. Owl, Inc.*, 110 F.4th 1296, 1306 (11th Cir. 2024) (citing *Wigod v. Wells Fargo Bank*, 673 F.3d 547, 581 (7th Cir. 2012) ("The absence of a private right of action from a federal statute provides no reason to dismiss a claim under a

16

state law just because it refers to or incorporates some element of the federal law.")).

Less clear is *what* part of the regulation the parties intended to incorporate. The ICI specifically states that "[b]y selecting RJBDP-RJ Bank Only, you authorize the deposit or investment of cash balances in your account in deposits issued by RJ Bank, which will bear a reasonable rate of interest (as required by 29 C.F.R. Section 2550.408b-4(b)(2))." That regulation requires that, "in the case of a bank or similar financial institution that invests plan assets in deposits in itself or its affiliates under an authorization contained in a plan or trust instrument, such authorization must name such bank or similar financial institution and must state that such bank or similar financial institution may make investments in deposits which bear a reasonable rate of interest in itself (or in an affiliate)."

The briefing underdevelops the significant and complicated nature of this provision. For example, Section 2550.408b-4(b)(2)'s requirement that disclaiming language be included in the authorization document does not clarify whether the parties intended to incorporate the "reasonable rate of interest" language as an affirmative duty imposed upon Raymond James. Also complicating the analysis is the potential disconnect between the ICI's language, which could reasonably be read to promise that the "reasonable rate

17

of interest" will flow to the client, and Section 2550.408b-4(b)(2)'s language, which appears to leave open the possibility that the financial institution will instead reap the benefits of the reasonable rate of interest. *See* 29 C.F.R. § 2550.408b-4(b)(2) (2026) ("[S]uch bank or similar financial institution may make investments in deposits which bear a reasonable rate of interest *in itself* (*or in an affiliate*)." (emphasis added)).

Because Raymond James fails to persuade otherwise at this time, I conclude that the complaint alleges a reasonable interpretation of the provision as an enforceable promise to pay RJ Bank Only eligible clients a reasonable rate of interest. *See In re JPMorgan Chase*, 2026 WL 396055, at *7–8 (finding plaintiffs sufficiently alleged a breach of contract claim regarding a similar "reasonable rate" provision and rejecting the argument that the provision was merely a mandated disclosure of a regulatory requirement because the "Defendants do not explain why a mandated disclosure cannot also create a contractual obligation").

Under the umbrella of this second theory of breach, the plaintiffs press a broader claim: Because the ICI states that the RBJDP and the RJ Bank Only programs will "pay the same rate of interest on the cash balances within each Interest Rate Tier," this statement is a promise to pay a reasonable rate of interest "on **all** of its clients' cash deposits in the RJBDP." CCAC ¶ 94. In other

words, despite the ICI tying the obligation to the RJ Bank Only version, it should also be applied to the RJBDP version. Raymond James contests this interpretation. MTD at 20; Reply 8–9. I agree with Raymond James. Although Raymond James committed itself to offering the same rates across both versions, to the extent that the "reasonable rate of interest" provision can be interpreted as an enforceable promise, it is a promise to pay a "reasonable rate" just to the RJ Bank Only customers.

Finally, Raymond James contends that the plaintiffs have, nonetheless, failed to allege a breach of any "reasonable rate of interest" obligation. MTD at 20–24. Raymond James points to the Consolidated Class Action Complaint's use of definitions offered by the IRS and the Department of Labor, arguing that the allegations do not amount to a breach under these standards. *Id.* at 20–21. The plaintiffs did not constrain themselves to these two definitions. *See* CCAC ¶ 140 ("Under these terms, *and any reasonable understanding* of what a reasonable rate of interest is, Raymond James did not secure for or pay to its clients a reasonable rate of interest . . . .") (emphasis added). Further, the Department of Labor definition indicates that one should determine the reasonableness of a rate by comparison to many of the other rates that the plaintiffs rely on throughout the complaint. *See id.* ¶ 139. For the same reasons that the complaint sufficiently alleges a breach of the "prevailing economic and

business conditions" provision, the complaint sufficiently alleges a breach of the "reasonable rate of interest" provision.

Raymond James's third argument is that the plaintiffs fail to plead causation because "Plaintiffs were free at any time to avoid the alleged harm by, for example, transferring their uninvested cash away from Raymond James or by investing it." MTD at 24. In short, because they did not move their cash to other financial vehicles after Raymond James set rates that allegedly breached the contract terms, the plaintiffs are responsible for their own harm. This argument does not negate causation but instead sounds in failure to mitigate damages, which is also known as the doctrine of avoidable consequences. *See Rubinstein v. Yehuda*, 38 F.4th 982, 1000 (11th Cir. 2022) ("Under Florida law, mitigation of damages—also called avoidable consequences—is typically directed at a plaintiff's action or inaction that occurs after the defendant's wrongful act and magnifies the resulting damages." (citing *Parker v. Montgomery*, 529 So. 2d 1145, 1147 (Fla. 1st DCA 1988))). Because failure to mitigate damages is an affirmative defense, *see Juv. Diabetes Rsch. Found. v. Rievman*, 370 So. 2d 33, 36–37 (Fla. 3d DCA 1979) (treating failure to mitigate as an affirmative defense); *Frederick v. Kirby Tankships, Inc.*, 205 F.3d 1277, 1286–87 (11th Cir. 2000) (holding that failure to mitigate damages is an affirmative defense), I decline to consider this

20

argument at the motion-to-dismiss stage, *see Quiller v. Barclays Am./Credit, Inc.*, 727 F.2d 1067, 1069 (11th Cir. 1984) ("Generally, the existence of an affirmative defense will not support a motion to dismiss."), *en banc reh'g*, 764 F.2d 1400 (11th Cir. 1985) (per curiam) (reinstating panel opinion). To be clear, the plaintiffs adequately allege that Raymond James's breaches damaged them. *See, e.g.*, CCAC ¶¶ 5–10, 98.

The plaintiffs' breach of contract claim survives insofar as it relies on the "prevailing economic and business conditions" theory. To the extent that the claim relies on the "reasonable rate of interest" theory, the plaintiffs may assert it only on behalf of customers in the RJ Bank Only version of the cash sweep program. For clarity moving forward and because they apply to different plaintiffs, the plaintiffs must file an amended complaint that divides the contract claims into two separate counts—one for each theory.

### 2. Breach of the Implied Covenant of Good Faith and Fair Dealing

Florida law implies a covenant of good faith and fair dealing in every contract to protect "the reasonable expectations of the contracting parties in light of their express agreement." *QBE Ins. Corp. v. Chalfonte Condo. Apartment Ass'n*, Inc., 94 So. 3d 541, 548 (Fla. 2012) (quoting *Barnes v. Burger King Corp.*, 932 F. Supp. 1420, 1438 (S.D. Fla. 1996)). Breach of the implied

covenant of good faith and fair dealing requires allegations of "a failure or refusal to discharge contractual responsibilities, prompted not by an honest mistake, bad judgment or negligence; but, rather by a conscious and deliberate act, which unfairly frustrates the agreed common purpose and disappoints the reasonable expectations of the other party." *Tiara Condo. Ass'n, Inc. v. Marsh & McLennan Cos., Inc.*, 607 F.3d 742, 747 (11th Cir. 2010) (quoting *Shibata v. Lim*, 133 F. Supp. 2d 1311, 1319 (M.D. Fla. 2000)). A duty of good faith must "relate to the performance of an express term of the contract and is not an abstract and independent term of a contract which may be asserted as a source of breach when all other terms have been performed pursuant to the contract requirements." *QBE Ins. Corp.*, 94 So. 3d at 548 (citing *Ins. Concepts & Design, Inc. v. Healthplan Servs., Inc.*, 785 So. 2d 1232, 1235 (Fla. 4th DCA 2001) (per curiam)).

Raymond James contends that the implied covenant claim should be dismissed because (1) it is duplicative of the breach of contract claim; (2) it would impose obligations beyond the express terms of the underlying contract; (3) the plaintiffs have failed to plead breach of an express term of the contract as required by Florida law; and (4) the plaintiffs had no reason to expect they would receive better interest rates because the disparity between the cash sweep program's rates and the comparator rates existed before the start of the

22

class. *See* MTD at 34–37. In its reply, Raymond James raises a fifth argument: that implied covenant claims are limited to claims relating to the central purpose of the contract. Reply at 14. Because Raymond James did not raise this argument in its motion to dismiss, I decline to consider it now. *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 683 (11th Cir. 2014) (holding that arguments made for the first time in a reply "come too late").

As to Raymond James's first argument, I disagree that the implied covenant claim here is duplicative of the breach of contract claim. As pleaded, it properly addresses the gap left in the ICI between express terms capping the fee Raymond James may charge and, for example, Raymond James's commitment to "vary" the interest rates received by the client "based upon prevailing economic and business conditions." *See* ICI at 44, 50 (describing the fee cap); *Publix Super Markets, Inc. v. Wilder Corp. of Del.*, 876 So. 2d 652, 654 (Fla. 2d DCA 2004) (describing the implied covenant claim's role as a gap-filler that addresses grants of discretion in a contract). In any event, even if it were duplicative, I agree with other courts that have held that an implied covenant claim may continue in the alternative when there is a dispute over the meaning of a contract's express terms. *See, e.g.*, *Wells Fargo*, 2025 WL 1785315, at *3. Here, the parties disagree over the meaning of the terms of the ICI regarding the extent of Raymond James's discretion to set the interest rate paid to its

23

clients. *Compare* MTD at 19 (describing Raymond James's discretion to set the interest rate as "subject only to the disclosed cap on fees"), *with* CCAC ¶ 64 (alleging that the interest rate "would be based on prevailing economic, market, and business conditions").

Raymond James's second argument that the implied covenant claim "would impose obligations beyond the 'express terms of the underlying contract' governing rate setting, . . . [thus] impermissibly overrid[ing] those express terms" is also unavailing. MTD at 35. In its reply, Raymond James identifies the terms that would be "impermissibly overrid[den]," *see id.*, as the rate-setting practices for the banks that would receive the cash, the cap on Raymond James's fees, and the disclosures that rates may be lower than those available elsewhere on the market, *see* Reply at 13. Recall that the implied covenant claim alleges obligations to secure a "fair and reasonable rate of interest" and to account for "prevailing economic and business conditions." *See* CCAC ¶¶ 186–188. Raymond James does not explain how these obligations would override the identified terms. I decline to speculate. Thus, I reject this argument.

Raymond James's third argument fails because the plaintiffs do plead, albeit less clearly than they could have, breach of the same express terms that form the basis for the breach of contract claims. *See* CCAC ¶ 188 ("Defendants

24

were obligated to pay . . . Class members a fair and reasonable rate of interest[,] . . . and to properly account for current or prevailing economic and business conditions . . . when paying or securing interest rates on their clients' cash sweep balances.").

Lastly, Raymond James contends that, because "the disparity between the Sweep Program's rates and other rates relied upon in the Complaint . . . existed at least as far back as 2018, before the beginning of the putative class period . . . there was no reasonable basis for Plaintiffs to expect the Sweep Program's rates to match those other rates." MTD at 36. Thus, "there is no basis to claim that Raymond James deprived Plaintiffs of the expected fruits of the contract." *Id.*

Although I disagree with Raymond James at this stage, this argument is not without merit. The key comparison point is not the time right before the class period. Rather, it is the time at which the various plaintiffs that participated in the cash sweep program established an account with Raymond James. The expectations of parties to a contract are set at the time they enter into the agreement. *See Air Prods. & Chems., Inc. v. La. Land & Expl. Co.*, 806 F.2d 1524, 1528 (11th Cir. 1986) ("When the court reviews a contract, it must consider the objects to be accomplished by the parties when they entered into the contract." (citing *Wright & Seaton, Inc. v. Prescott*, 420 So. 2d 623, 629 (Fla.

4th DCA 1982))). Even if I considered the "account opening documents" for the plaintiffs that Raymond James provides, *see* (Docs. 101, 101-3, 101-4, and 101-5), which would supplement the information in the complaint such that the relevant time for each of the named plaintiffs could be ascertained, I still would disagree. The allegations in the complaint, taken as true, do not provide sufficient information to determine the disparity between the cash sweep program and the other relevant rates from the time period when the plaintiffs established their accounts with Raymond James. The allegations also do not make clear which interest tier the plaintiffs fell under and at what times. Because the interest rates varied across tiers, without this information it is difficult to know what disparity (if any) each plaintiff could have reasonably expected to persist.

Further, the plaintiffs focus their allegations on the years of the proposed class period. Admittedly, there are some charts that indicate that there was a substantial disparity at least as early as 2018 and at least for one interest rate tier. *See* CCAC ¶¶ 107, 142, 155. But, as the plaintiffs point out, these charts appear to show that the cash sweep rate peaked in 2019 before decreasing in late-2019 through part of 2022. *See* Resp. at 28 n.24; CCAC ¶¶ 107, 142, 155. Although it rose again when the other rates increased in subsequent years, the cash sweep rate never matched that January 2019 peak even though other

26

allegedly relevant rates in 2023 and 2024 far surpassed their respective January 2019 amounts. *See* Resp. at 28 n.24; CCAC ¶¶ 107, 142, 155. Thus, even if the plaintiffs could be said to have reasonably expected some substantial disparity in the rates, it cannot be determined from the allegations of the complaint that they reasonably expected the even larger disparity they experienced later.

The plaintiffs' claim for breach of the implied covenant of good faith and fair dealing may move forward. Like the contract claims, the plaintiffs must file an amended complaint that separates into two counts their breach of implied covenant claims—one count for each of the express contract terms underlying the claims.

### 3. Breach of Fiduciary Duty

To state a cause of action for breach of fiduciary duty, a plaintiff must allege: "the existence of a duty, a breach of that duty, and damage proximately caused by that breach." *Sola v. Markel*, 320 So. 3d 326, 328 (Fla. 5th DCA 2021).

Raymond James offers an array of reasons why the breach of fiduciary duty claim should fail: (1) it is "duplicative" of the breach of contract claim and violates the independent tort doctrine; (2) there was no fiduciary duty to non-advisory accounts; (3) there are no allegations that Raymond James

27

recommended the cash sweep program; (4) the fiduciary duty for advisory accounts did not extend to the interest rates; (5) agency law and applicable regulations do not create a duty as to the interest rates; and (6) the plaintiffs failed to plead breach and causation. *See* MTD at 25–34.

Raymond James raises in passing that the fiduciary duty claim must be dismissed because it runs afoul of Florida's independent tort doctrine. MTD at 26. The plaintiffs have little to say in response. Resp. at 37. Raymond James is correct—to a point.

Under Florida's independent tort doctrine, "a plaintiff may not recover in tort for a contract dispute unless the tort is independent of any breach of contract." *Island Travel & Tours, Co. v. MYR Indep., Inc.*, 300 So. 3d 1236, 1239 (Fla. 3d DCA 2020) (per curiam). A plaintiff bringing both a breach of contract and a tort claim must therefore allege, in addition to the breach of contract, "some other conduct amounting to an independent tort." *Lamm v. State St. Bank & Tr.*, 749 F.3d 938, 947 (11th Cir. 2014) (quoting *U.S. Fire Ins. Co. v. ADT Sec. Servs., Inc.*, 134 So. 3d 477, 480 (Fla. 2d DCA 2013)). A plaintiff may not make out a claim for breach of a fiduciary duty based solely on the same conduct that forms the basis for a claim for breach of contract. *See, e.g.*, *Tiara Condo. Ass'n, Inc. v. Marsh & McLennan Cos., Inc.*, 110 So. 3d 399, 408 (Fla. 2013) (Pariente, J., concurring); *Island Travel & Tours, Co.*, 300 So. 3d at

28

1240 (dismissing tort claims that were "ultimately based on the same underlying conduct giving rise to [the plaintiff's] contract claim"); *XP Glob.*, No. 16-CV-80905, 2016 WL 6679427, at *4 (S.D. Fla. Nov. 14, 2016) (dismissing a fiduciary duty claim).

The complaint alleges that Raymond James breached its fiduciary duty by (1) failing to pay to or secure for the plaintiffs "a fair or reasonable rate of interest on their free credit balances that properly took into account prevailing economic and business conditions"; (2) "fail[ing] to act in the best interests of" the plaintiffs "with respect to the Cash Sweep Program"; and (3) recommending to the plaintiffs "that they utilize and continue to utilize the Cash Sweep Program." *See* CCAC ¶ 193. The first allegation is the same as the conduct that allegedly breached the ICI and MCA. *See id.* ¶¶ 182–183. The second allegation, although not duplicative on its face, is also intertwined with the contract claim. The plaintiffs do not allege facts that allow the conclusion that different conduct underpins the "failing to act in the best interests of" theory. Instead, the factual allegations support that Raymond James failed to act in the best interests of the plaintiffs only because it failed to pay an interest rate in line with the ICI's obligations. *See, e.g., id.* ¶¶ 53, 83, 92, 126. These first two theories of breach are barred by the independent tort doctrine.

29

Further precluding the plaintiffs' first two theories is that, under Florida law, "a cause of action for breach of fiduciary duty will not lie where the claim of breach is dependent upon the existence of a contractual relationship between the parties. This is true because the duty is owed only as a result of the existence of the contract." *Michael Titze Co. Inc. v. Simon Prop. Grp., Inc.*, 400 F. App'x 455, 461 (11th Cir. 2010) (per curiam) (citation modified) (quoting *Detwiler v. Bank of Cent. Fla.,* 736 So.2d 757, 759 (Fla. 5th DCA 1999)); *see* 27 FLA. JUR. 2d *Fraud and Deceit* § 15 (2025) ("A cause of action for breach of fiduciary duty will not lie . . . where the claim of breach is dependent upon the existence of a contractual relationship between the parties inasmuch as a duty is owed only as a result of the existence of the contract."). These two theories of breach of a fiduciary duty depend on the existence of the ICI and MCA. The plaintiffs must plead a source of fiduciary duty and breach separate from these contracts.

The third theory of breach—that Raymond James recommended that its clients use the cash sweep program—fails for a different reason: there are no sufficient allegations that Raymond James's financial advisors recommended that clients use the sweep program. *See* MTD at 27. Indeed, of the sparse allegations that support the recommendation theory, one is the "mere conclusory statement[]," *Iqbal*, 556 U.S. at 678, that Raymond James

"recommended to Plaintiffs and the Class that they utilize and continue to utilize the Cash Sweep Program," CCAC ¶ 193. The other is that "Raymond James's default placement of Plaintiffs' and other Class members' cash into the Sweep Programs constitutes a 'recommendation' within the scope of Reg. BI." *Id.* ¶ 78. Raymond James contests this interpretation of "recommendation," and, for good measure, the application of Regulation Best Interest (Reg. BI), which establishes the standard of conduct for broker-dealers when making recommendations involving securities transactions or investment strategies, to cash sweep programs in general. *See* MTD at 27, 30–31; Reply at 10–11; *see also* SEC, *Regulation Best Interest* (Sept. 9, 2019), https://www.sec.gov/resources-small-businesses/small-business-compliance-guides/regulation-best-interest [https://perma.cc/HDG3-LSTN].

The plaintiffs fail to persuade that the "default placement of [Raymond James's] customers in the [cash sweep program] was a recommendation." Resp. at 32. They point to a cease-and-desist order from the SEC to Wells Fargo regarding the default placement of uninvested client cash into a cash sweep program. *Id.* at 33; (Doc. 114-2) at 5. At most, this indicates that the SEC might likewise conclude that Raymond James should not structure its cash sweep program similarly. But it provides no evidence that the default placement is a "recommendation." The plaintiffs' reliance on a regulatory notice from FINRA

31

similarly fails. *See* Resp. at 33 n.35. The notice contemplates that recommendations must be predicated on one or more communications. *See* FINRA Regulatory Notice 11-02 (Jan. 2011) at 2-3. Default placement of funds is not a communication, and the plaintiffs provide no reason to conclude otherwise.

Thus, the plaintiffs' third theory, as pleaded, fails to state a claim and must be dismissed. Without a plausible theory for breach, the claim for breach of fiduciary duty is dismissed.

The plaintiffs request leave to amend their complaint should I grant "any part" of the motion to dismiss. Resp. at 40 n.43. They may amend their complaint to state a plausible claim for breach of fiduciary duty that is not precluded by Florida law. In doing so, they must identify a source of fiduciary duty and breach that are distinct from the contracts at issue in this action.

Regulations that do not provide a relevant private cause of action will not suffice. *See, e.g.*, CCAC ¶¶ 67, 71–79 (relying on the Investment Advisers Act of 1940 (IAA) and Reg. BI). Raymond James correctly disputes the use of both. *See* MTD at 30–32. Neither the Investment Advisers Act nor Regulation Best Interest provides the plaintiffs with a relevant private right of action. *See Transam. Mortg. Advisors v. Lewis*, 444 U.S. 11, 24 (1979) ("[W]e hold that there exists a limited private remedy under the Investment Advisers Act of

32

1940 to void an investment advisers contract, but that the Act confers no other private causes of action, legal or equitable."); Regulation Best Interest: The Broker-Dealer Standard of Conduct, 84 Fed. Reg. 33318, 33327 (July 12, 2019) (final rule codifying regulation at 17 C.F.R. pt. 240) ("[W]e do not believe Regulation Best Interest creates any new private right of action or right of rescission, nor do we intend such a result."). Indeed, it appears that neither applies to cash sweep programs at all. *See* 15 U.S.C. §§ 78c(a)(10) (definition of securities applicable to Reg BI), 80b-2(a)(18) (definition of securities applicable to the IAA). If the IAA and Reg BI do not provide a private right of action, they cannot be construed to give rise to a fiduciary duty flowing to the plaintiffs. *See Catamaran Health Sols., LLC*, 687 F. App'x at 831 (indicating that there is no precedent in Florida for breach of fiduciary duty claims "premised on violations of statutes that contain neither express nor implied private rights of action" and affirming dismissal on such grounds); *In re LPL Fin. Cash Sweep Litig.*, 789 F. Supp. 3d 961, 988 (S.D. Cal. 2025) (rejecting a breach of fiduciary duty claim premised on the IAA and Reg BI because they do not provide private causes of action).

Nor will Raymond James's alleged undertaking "to act as an agent" for its clients with regard to ministerial functions necessary for the cash sweep program suffice for a breach of fiduciary duty along the lines of what the

33

plaintiffs have pleaded. *See* CCAC ¶¶ 81–86 (alleging a theory of fiduciary duty arising out of an agency relationship). The ICI states that Raymond James "will act as [the account holder's] agent and custodian in establishing and maintaining the deposit accounts at each participating bank." ICI at 45. It also states that Raymond James "is acting as [the account holder's] agent in establishing the deposit accounts at each bank, depositing funds into the deposit accounts, withdrawing funds from the deposit accounts, and transferring cash among the deposit accounts." *Id.* at 48. Under Florida law, "[i]t is well settled that an agent is a fiduciary with respect to the matters within the scope of his agency." *Fisher v. Grady*, 178 So. 852, 860 (Fla. 1937). Fiduciary duties that arise between a principal and an agent "are not unlimited; an agent is a fiduciary only 'with respect to matters within the scope of his agency.'" *In re Jan. 2021 Short Squeeze Trading Litig.*, 76 F.4th 1335, 1346 (11th Cir. 2023) (applying Florida law) (quoting RESTATEMENT (SECOND) OF AGENCY § 13 (A.L.I. 1958)).

As Raymond James contends, *see* MTD at 29–30 (citing CCAC ¶ 82), the scope of any agency created by the ICI is limited to the ministerial activities of maintaining the deposit accounts at the banks, depositing funds into the accounts, withdrawing funds from the accounts, and transferring cash between the accounts, *see* ICI at 45, 48. The scope does not encompass setting the

34

interest rates paid to the clients who participate in the cash sweep program. Thus, the plaintiffs' agency theory also fails. *See In re LPL*, 789 F. Supp. 3d at 987–88 (rejecting a similar agency theory).

In response to Raymond James's arguments, the plaintiffs assert that they have properly alleged a fiduciary duty because they allege "complete control and discretion by [Raymond James] over all aspects of the [cash sweep program]." Resp. at 35–36. In support of this proposition, they offer a single non-binding case in which the parties *agreed* that the defendant owed the plaintiff a fiduciary duty. *See id.* (citing *Dimor Aerospace, Inc. v. Lepschy*, No. 24-80884-CIV, 2025 WL 3689542, at *2–3 (S.D. Fla. June 30, 2025). This argument fails.

The plaintiffs may amend their complaint to state a plausible claim for breach of fiduciary duty to the extent that they can address and avoid these deficiencies.

### 4. Unjust Enrichment

Florida law does not allow an unjust enrichment claim "if an express contract exists concerning the same subject matter." *12550 Biscayne Condo. Ass'n, Inc. v. NRD Invs., LLC.*, 336 So. 3d 750, 757 (Fla. 3d DCA 2021) (collecting cases); *see* MTD at 37. The plaintiffs respond that they may plead an unjust enrichment claim in the alternative to their contract claim. Resp. at

35

38–39. Not so under the circumstances of this action. "Unjust enrichment may only be pleaded in the alternative to a breach of contract claim where one of the parties asserts that the contract governing the dispute is invalid." *Degutis v. Fin. Freedom, LLC*, 978 F. Supp. 2d 1243, 1265 (M.D. Fla. 2013). Neither the plaintiffs nor Raymond James contests the validity of the MCA or the ICI. The unjust enrichment claim is dismissed with prejudice because amendment would be futile. *See Silberman v. Miami Dade Transit*, 927 F.3d 1123, 1133 (11th Cir. 2019).

### 5. RJ Trust

RJ Trust moves to dismiss itself from this action because it "is the custodian for IRA accounts but does not perform any functions related to the Sweep Program[,]" and it "is not alleged to have had—and could not be alleged to have had—any responsibility for the Sweep Program or to have received any fees from [it]." MTD at 39. I interpret this to mean that RJ Trust argues that the complaint fails to state a claim against it.

The plaintiffs oppose dismissing RJ Trust because it is a party to the contracts between Raymond James and the plaintiffs, *see* Resp. at 40 (citing CCAC ¶ 181 and the MCA at 2), and because it was "required to 'use all reasonable care, skill, prudence and diligence in the *administration* of the Depositor's Custodial Account,'" Resp. at 39 (citing, in part, CCAC ¶¶ 15, 17–

20, 87). While RJ Trust is correct that there are no allegations of improper "administration" of the accounts, Reply at 15 n.6, the plaintiffs have properly pleaded a breach of contract claim and a breach of the implied covenant of good faith and fair dealing claim. The plaintiffs allege that RJ Trust is a party to the underlying contract, albeit in a group with the other defendants, *see, e.g.*, CCAC ¶ 29, and the MCA does not contradict this allegation, *see* MCA at 2 (defining "we," "us," "our," "ours," "the Firm," and "Raymond James" to include its affiliates). RJ Trust provides no reason why the remaining claims, *as pleaded*, are insufficient as to it but not as to the other defendants. I deny RJ Trust's motion.

## IV.   CONCLUSION

Raymond James moves to dismiss all claims against it based on the statute of limitations and failure to state a claim. The statute of limitations does not bar any claim in its entirety, but the plaintiffs may not recover damages from outside the relevant statute of limitations period. The breach of contract claim remains with the "prevailing economic and business conditions" theory available to all plaintiffs. The "reasonable rate of interest" theory is limited to the RJ Bank Only plaintiffs. The plaintiffs must file an amended complaint that separates the contract claim into two claims—one for each of the surviving theories. The breach of the implied covenant of good faith and

fair dealing claim also moves forward. In the amended complaint, the plaintiffs must separate the implied covenant claim into two claims—one for each express contract term serving as the foundation of the claim. The breach of fiduciary duty claim is dismissed without prejudice, and the plaintiffs may amend their complaint to address the identified deficiencies. The unjust enrichment claim is dismissed with prejudice. RJ Trust remains a defendant.

Accordingly, the following is **ORDERED**:

1. Defendants' Motion to Dismiss all claims (Doc. 100) is **GRANTED IN PART**.

2. Count III in the Consolidated Class Action Complaint (Doc. 58) is **DISMISSED** without prejudice. Count IV is **DISMISSED** with prejudice.

3. The plaintiffs must amend their complaint in accordance with this order no later than **April 10, 2026**. The defendants must respond to the operative complaint no later than **April 24, 2026**.

**ORDERED** in Tampa, Florida, on March 27, 2026.

Kathryn Kimball Mizelle
United States District Judge

38